IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. <br>   JAMES KLUPPELBERG <br><br>                   Petitioner, <br><br>                   v. <br><br> TERRY MCCANN, Warden, <br>   Stateville Correctional Center, <br><br>                   Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br> No. 08 C 3168 <br><br><br> The Honorable <br> James B. Moran, <br> Judge Presiding. |

**RESPONSE TO MOTION TO STAY PROCEEDINGS**

Pursuant to this Court's Order dated July 14, 2008 (Doc. 12), respondent Terry McCann hereby responds to petitioner's motion to stay proceedings (Doc. 5). This Court should either (i) dismiss petitioner's procedurally defaulted claims and the litigation should then proceed on the non-defaulted claims, or (ii) stay the proceedings to allow petitioner to present the defaulted claims to the state courts. In support, respondent states as follows:

      1.      Petitioner James Kluppelberg is incarcerated at the Stateville Correctional Center in Joliet, Illinois, and is identified as prisoner number N50230. Terry McCann, the warden of that facility, has custody of petitioner.

      2.      After being convicted in the Circuit Court of Cook County of murder and arson, petitioner unsuccessfully appealed his judgment and sentence through each level of the state appellate courts. *See* Pet. at 1-3. He also filed a

postconviction petition (PC) in the state courts, and he unsuccessfully appealed the denial of that PC through each level of the state appellate courts. *See* Pet. at 4-5.

3. Petitioner then filed the instant petition for federal habeas review, in which he included at least sixteen claims and allegations that were not presented to the state courts. *See* Pet. at 24-26 (indicating that grounds two, three, four, five, seven, eight, nine, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, and nineteen were not raised to the state courts); Doc. 5 at 11 (stating that grounds four, five, seven, eight, and nine in his habeas petition were not raised to the state courts and are based on "new evidence").

4. Additionally, petitioner filed a motion to stay proceedings, in which he asked this Court to "stay his federal habeas petition and hold it in abeyance should the Court deem his claims to be unexhausted." Doc. 5 at 9. He also "move[d] for clarification of how he should proceed." Doc. 5 at 1.

5. Petitioner phrased his predicament as one of exhaustion, but because he exhausted his state court remedies through his appeal and PC, he instead faces the associated bar of procedural default of the issues he failed to raise in state court. *See Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) ("However, where, as in this case, the petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief . . . but rather the separate but related doctrine of procedural default."); *see also Crivens v. Roth*, 172 F.3d 991, 995

(7th Cir. 1999) (differentiating between exhaustion of remedies and procedural default of issues).

6.     Unless petitioner is able to file a successive PC in state court, his claims that were not presented to the state courts are procedurally defaulted because he did not raise them through one complete round of the State's established appellate review process.  Federal courts generally will not address the merits of a habeas claim if the petitioner procedurally defaulted it in state court proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

7.     Like the exhaustion doctrine, the procedural default doctrine is designed to give state courts a full and fair opportunity to resolve constitutional claims before those claims are presented to federal courts; state prisoners must give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process before filing a habeas petition.  *See id.*; *see also* 28 U.S.C. § 2254(b)(1).

8.     Further, "[a]dequate presentation of a claim requires a petitioner to present both the operative facts and the legal principles that control each claim to the state judiciary." *Stevens v. McBride,* 489 F.3d 883, 894 (7th Cir. 2007) (quotation omitted).  In *Stevens*, the Seventh Circuit held that the petitioner had procedurally defaulted certain ineffective assistance of counsel claims even though he had raised ineffective assistance claims to the state courts based on other grounds.  "[A]lthough Stevens presented his ineffectiveness claim to the state courts, he never presented as a supporting argument the lawyers' failure to raise

3

the [guilty but mentally ill] defense at trial." *Id*. The "purposes behind the rules of procedural default require[] a party to present to the state court both the facts and the law on the which he relies." *Id*. "Thus, the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Id*.[1]

    9.    In this case, petitioner may still have an opportunity to present his defaulted claims to the state courts. Petitioner asserts he was impeded from discovering relevant evidence necessary to raising the defaulted claims. Doc. 5 at 4, 6. Under State law, a prisoner who shows cause may receive leave to file a successive postconviction petition, and "a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f).

    10.    This Court has discretion to stay a petition and hold it in abeyance pending resolution by the state courts, but the Supreme Court has directed that this procedure "should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see also Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006) (suggesting that a prisoner who is uncertain whether a postconviction action will be considered properly filed should file a "protective petition" and seek a stay). But

---

[1] There are two limited exceptions to procedural default: (1) if petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law; and (2) if petitioner can show that the failure to consider the claim will result in a fundamental miscarriage of justice. *See Perrequet*, 390 F.3d at 514; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Steward v. Gilmore*, 80 F.3d 1205, 1211-1212 (7th Cir. 1996).

"[s]tay and abeyance . . . has the potential to undermine [the] purposes" of the Antiterrorism and Effective Death Penalty Act of 1996. *Rhines*, 544 U.S. at 277.

11. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* To satisfy *Rhines*, petitioner also must demonstrate that the unexhausted claims are potentially meritorious, and that he has not "engage[d] in abusive litigation tactics or intentional delay." *Id.* at 277-78.

12. Petitioner has not made a sufficient showing of good cause to be entitled to a stay under *Rhines*.[2] He has not made clear that he has obtained previously unattainable "new evidence." With respect to the police report that he alleges implicates someone other than him, he may have received the report through a "second FOIA request in 2008" (Pet. at 9 n.1), but he does not identify to whom either FOIA request was made or whether it was possible to make the FOIA request earlier. He also may have discovered the report based on the search of a law student in April 2008 "of old newspapers and an old case file" after reviewing old coverage of the fire in the "Back of the Yards Journal." Pet. at 25. That petitioner "only recently became aware" of these facts, however, does not make

---

[2] If petitioner satisfies *Rhines*'s requirements, a stay would be appropriate; he is on the verge of miss the one-year deadline for filing a habeas petition that is prescribed by 28 U.S.C. § 2244, at least as to some of his claims. *See Dolis*, 454 F.3d at 725.

them new evidence. *See Daniels v. Uchtman*, 421 F.3d 490, 492 (7th Cir. 2005) ("Even though the facts . . . were not actually discovered by [the petitioner's] counsel until an interview in September 2000, [the petitioner] could have discovered the information supporting his *Brady* claim at least as early as June 1999.").

13.   Petitioner also has not provided evidence, via affidavit or otherwise, that the police report was not turned over by the State during petitioner's proceedings in state court. To the contrary, he concedes that he has raised certain claims "in the alternative should the State contend that it disclosed information regarding [the other arsonist], or should this court find that [petitioner's] attorney should have investigated and known about [the other arsonist]" who burned down nearby buildings. Pet . at 25. The burden is on petitioner to demonstrate, among other things, that the alleged materials were not disclosed to him and that he could not otherwise have become aware of it. *See Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) ("To establish a *Brady* violation, [a petitioner] must show three elements: (1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence has been suppressed by the government, either willfully or inadvertently; and (3) the suppressed evidence resulted in prejudice.") (internal quotation marks omitted); *Daniels*, 421 F.3d at 492 ("Section 2244(d)(1)(D) requires the petitioner to exercise due diligence in discovering the factual basis for his claims."). Notably, the existence of the nearby fire and the other arsonist was in the newspapers at the time, so the information was then in the public domain. *See* Pet Exh. J.

14.     Moreover, petitioner has not established that the claims are potentially meritorious by being exculpatory. *See Harris*, 486 F.3d at 1014 (evidence must be "material" such that "there is a reasonable probability that the suppressed evidence would have produced a different verdict") (internal quotation marks omitted). The police report regarding the arsonist convicted of a fire in the same neighborhood is not exculpatory. Petitioner inaccurately writes that the witness in the police report "confessed to possibly having set the fire for which [petitioner] was convicted." Doc. 5 at 7. However, the report states that the witness "did not remember" setting the fire, but could not rule it out because she was "intoxicated" and had no memory of anything after finding her own building burned down. Doc. 5, Exh C at 2.

15.     As for the witness recantation, petitioner has not demonstrated that his claim is potentially meritorious. "It is well established that recantations are generally viewed with considerable skepticism." *United States v. Connolly*, 504 F.3d 206, 214 (1st Cir. 2007) (internal quotation marks omitted); *see also United States v. Walker*, 25 F.3d 540, 549 (7th Cir. 1994) ("To win a new trial based on recanted testimony, a defendant must demonstrate that the recantation is true, that the jury might have reached a different result were it not for the false testimony, and that the witness's testimony took the defendant by surprise."). Although the affidavits indicate that the witness and petitioner "didn't like each other," the two men were in the same group of friends "getting high" together. *See* Pet. Exhs. B, C, and D. Moreover, according to this witness he lied under oath to

7

obtain a lesser sentence. Pet. Exh. B. Thus, "there is little support for the truth or trustworthiness of" the recantation, and no evidence at all that the testimony took petitioner by surprise. *See Walker*, 25 F.3d at 549.

16. The letter and report by Russell Ogle of "Exponent" do not constitute new evidence. They instead represent new analyses of existing evidence. *See* Doc. 5 at 6 n.1 ("Mr. Ogle examined the police reports, trial transcripts and photographs of the fire – i.e., the evidence that was already before the state court during trial . . .").

17. At this juncture, the Court should proceed in one of two ways: (1) dismiss the defaulted claims; or (2) stay the proceedings to give petitioner an opportunity to present his defaulted claims to the state courts. The Court should choose the latter only if petitioner makes a stronger showing regarding the *Rhines* factors listed above. In that circumstance, comity and the availability of a state remedy in the case of "new evidence" dictate that the state courts be given the first opportunity to resolve constitutional claims of a state prisoner such as petitioner.

August 14, 2008                                    Respectfully submitted,

                                                   LISA MADIGAN
                                                   Attorney General of Illinois

                                          By:      s/Eldad Z. Malamuth
                                                   ELDAD Z. MALAMUTH, Bar # 6275421
                                                   Assistant Attorney General
                                                   100 West Randolph Street, 12th Floor
                                                   Chicago, Illinois 60601-3218
                                                   TELEPHONE: (312) 814-2235
                                                   FAX: (312) 814-2253
                                                   E-MAIL: emalamuth@atg.state.il.us

## CERTIFICATE OF SERVICE

I certify that on August 14, 2008, I electronically filed respondent's **Response to Motion to Stay Proceedings** with the clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which will send notice to the following CM/ECF users:

Russell R. Ainsworth
The Exoneration Project
6020 S. University Ave.
Chicago, IL 60637
russell@loevy.com

Gayle Horn
The Exoneration Project
6020 South University Avenue
Chicago, IL 60637
ghorn@law.uchicago.edu


By:     s/ Eldad Z. Malamuth
ELDAD Z. MALAMUTH, Bar # 6275421
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-2235
FAX: (312) 814-2253
E-MAIL: emalamuth@atg.state.il.us