IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. <br> JAMES KLUPPELBERG (N50230), <br><br> Petitioner, <br><br> vs. <br><br> TERRY McCANN, Warden, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 08 C 3168 <br><br><br> Judge Moran <br><br> Magistrate Judge Keys |

## MOTION FOR LEAVE TO SUBMIT REPLY BRIEF

NOW COMES Petitioner, JAMES KLUPPELBERG, by and through his attorneys, THE EXONERATION PROJECT, and requests that this Court permit him to file the reply brief, attached hereto as Exhibit 1:

1. On June 2, 2008, Petitioner James Kluppelberg filed his habeas petition, alleging 19 grounds for federal habeas relief. See Dckt No. 1.

2. In addition, because Kluppelberg had located new evidence demonstrating his innocence and the State's misconduct in securing his conviction after proceedings on his state post-conviction petition were completed, Kluppelberg filed a Motion for Leave to Stay Petition and Hold in Abeyance Should Court Deem Claims Unexhausted. See Dckt No. 5. That "protective motion" was filed in accordance with Rhines v. Weber, 544 U.S. 269 (2005), and sought clarification of how Kluppelberg should proceed given the grave rights at issue in this case.

3. In response, the State for the first time raised the issue of procedural default, not previously discussed in Kluppelberg's petition. See Dckt No. 15. Although the State's response is less than clear on this point, the State at least appears to be arguing in part that Kluppelberg

"faces the associated bar of procedural default" rather than that of exhaustion. See Dckt No. 15, at ¶ 5; but cf., id. at ¶ 9. The State then contends that this Court should "dismiss the defaulted claims." See id. at ¶ 17.

4. Petitioner therefore seeks leave to submit a reply brief to address the issue of procedural default. As set forth in his reply brief, Petitioner believes that he has satisfied the "cause and prejudice" and "fundamental miscarriage of justice" exceptions to procedural default such that his entire petition should be heard.

5. In addition, in its brief, the State made multiple mischaracterizations of the record, including how the suppressed confession of the viable, alternative suspect was located, and the nature of the recantation testimony given. As such, Petitioner also requests leave to file his reply brief to correct those erroneous representations.

6. Given the very significant rights at issue in this case, Petitioner believes that a reply brief is warranted.

WHEREFORE, Petitioner, James Kluppelberg, respectfully requests that this Court grant him permission to file the reply brief attached hereto as Exhibit 1.

Respectfully Submitted,

___/s/Gayle Horn

Jon Loevy
Russell Ainsworth
Gayle Horn
Tara Thompson
THE EXONERATION PROJECT
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 834-4488 (phone)
(773) 702-2063 (fax)

## CERTIFICATE OF SERVICE

    I, Gayle Horn, certify that on August 26, 2008, I delivered the attached motion to the counsel of record by electronic means.

                                                                                           /s/Gayle Horn

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel.<br>JAMES KLUPPELBERG (N50230),<br><br>        Petitioner,<br><br>vs.<br><br>TERRY McCANN, Warden,<br><br>        Respondent. | 08 C 3168<br><br>Judge Moran<br><br>Magistrate Judge Keys |

**REPLY IN SUPPORT OF PETITIONER'S
MOTION TO HAVE CLAIMS HEARD**

NOW COMES Petitioner, JAMES KLUPPELBERG, by and through his attorneys, THE EXONERATION PROJECT, and submits this reply in support of his motion to have his claims based on new evidence heard by this Court:

**Introduction**

According to the State, despite its obligations to disclose Brady material, it was James Kluppelberg's responsibility to delve through four years of newspaper clippings in the hope that he would uncover information about an alternative suspect, Isabel Ramos, who confessed to police that she might have started the fire for which Kluppelberg was convicted. Such Herculean feats are not required by law. Moreover, inexplicably, the State argues that the information in the police report memorializing Ramos' admission is not exculpatory. That contention is without merit.

Nor does the State succeed in diminishing the exculpatory value of the other major piece of new evidence that Kluppelberg has secured since his conviction and the filing of his state post-conviction petition: the recantation of the State's only occurrence witness, Duane Glassco.


EXHIBIT A

Although the State relied heavily on Glassco in securing Kluppelberg's conviction, it nonetheless now contends that Glassco's credibility is compromised. Such determinations are, however, wholly inappropriate on the cold record currently before this Court.

The only matter on which the State and petitioner appear to agree is that petitioner filed his "protective motion" in an effort to preserve his rights. In addition to exhaustion, in its response the State has raised the related doctrine of procedural default, apparently arguing that the claims that Kluppelberg raised in his petition based on new evidence fall within the rubric of procedural default.[1] Because Kluppelberg has satisfied the requirements to overcome procedural default, he should proceed before this Court on his complete petition.

I.      **James Kluppelberg Has Met the Requirements to Overcome Procedural Default**

Kluppelberg has completed one full round of direct appeals and one full round of briefing on his post-conviction petition. Generally speaking, the Court has "not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). Pursuant to O'Sullivan, Kluppelberg's claims therefore would be considered exhausted. Yet, because they rely on new evidence only recently obtained – the previously suppressed confession of Isabel Ramos and the recantation of Duane Glassco – certain of Kluppelberg's claims are potentially subject to procedural default. See Crivens v. Roth, 172 F.3d 991, 995 (7th Cir. 1995) (finding that petitioner had satisfied the exhaustion

---

[1]     It is not clear from its submission whether the State believes exhaustion or procedural default to apply. On the one hand, the State contends that "because [Kluppelberg] exhausted his state court remedies through his appeal and PC, he instead faces the associated bar of procedural default of the issues he failed to raise in state court." See Dckt No. 15, Resp. Mot. Stay, at ¶ 5. Yet, just paragraphs later, the State argues that "petitioner may still have an opportunity to present his defaulted claims to the state courts." Id. ¶ 9. Moreover, the State then addresses Rhines v. Weber, 544 U.S. 269 (2005) and its attendant requirements for stay and abey, rather than the criteria for excusing procedural default. Id. ¶¶ 12-15.

requirement despite raising new Brady claim, but that he was subject to procedural default); see also Dckt No. 1, Habeas Pet., Grounds 4, 5, 7, 8 and 9.

A petitioner is barred from raising a defaulted claim as a basis for federal habeas corpus relief unless he can (1) excuse the default by "demonstrate[ing] . . . cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) show that the case falls within the category of cases that the Supreme Court has characterized as "fundamental miscarriages of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Kluppelberg's claims satisfy both safety valves.

### A. Kluppelberg's Claims Based on Isabel Ramos' Suppressed Confession

In his habeas petition, Kluppelberg raised several claims based on new evidence that he uncovered that Isabel Ramos confessed to possibly having set the fire for which he was convicted. See Dckt No. 1, Habeas Pet., Grounds 7, 8 and 9. Although the State contends that Kluppelberg cannot demonstrate "cause" and "prejudice" sufficient to overcome the hurdle of procedural default on these claims, such a contention is belied by the record.

The courts have uniformly held that "cause" is satisfied where counsel did not know and with reasonable diligence could not have discovered the factual predicate for the claim at the time of the alleged procedural default. See, e.g., Strickler v. Greene, 527 U.S. 263, 289-90 (1999). Violations of Brady v. Maryland, 373 U.S. 83 (1963), fall squarely within that framework. For example, as Strickler explains, where the prosecution has suppressed evidence favorable to the defense, and thereby "impeded trial counsel's access to the factual basis for making a Brady claim," "that ordinarily establish[es] the existence of cause for a procedural default." Strickler, 527 U.S. at 289-90; see also Crivens, 172 F.3d at 995-96.

3

That is exactly the case here. The information relating to Isabel Ramos' confession was never turned over to defense counsel. To the contrary, Kluppelberg only found this information through sheer luck: As set forth in his habeas petition, one of the law students working in The Exoneration Project at the University of Chicago Law School reviewed old copies of the <u>Back of the Yards Journal</u> for coverage of the fire. In doing so, she located an article about Isabel Ramos, which indicated that Ramos had started a fire within blocks and just hours before the fire at 4448 S. Hermitage for which Kluppelberg was convicted, and that displayed many of the same qualities as the fire at 4448 S. Hermitage. The law student then checked out Ramos' court file, where she found the police report in which Ramos confessed that she may have set the fire at 4448 S. Hermitage.

Incredibly, despite the State's failure to disclose this material and despite its obvious exculpatory nature, the State contends that information relating to Isabel Ramos' confession is not <u>Brady</u> material (and therefore, presumably, does not meet the requirement for "cause" and "prejudice" under procedural default).[2] First, according to the State, Kluppelberg has not demonstrated that the information contained in the police report was suppressed. That contention is flatly contradicted by the record. In Kluppelberg's habeas petition, he included an affidavit by his trial attorney, Marshall Weinberg. In that affidavit, Weinberg avers that he did not receive <u>any</u> information relating to Isabel Ramos in pretrial discovery; had he, he would have used it in Kluppelberg's defense. <u>See</u> Dckt No. 1, Habeas Pet., Exhibit H, Aff. Weinberg ¶ 6.[3]

---

[2] In addition, because the inquiry for "stay and abey" overlaps significantly with that for the related doctrine of procedural default, Kluppelberg has also met the criteria for "stay and abey" should this Court deem his claims based on the undisclosed information about Ramos unexhausted.

[3] The State argues that Kluppelberg "may have received the report [relating to Ramos] through a 'second FOIA request in 2008,'" citing to Kluppelberg's petition. As made clear in Kluppelberg's habeas petition, that FOIA did not return any information whatsoever relating to

4

Second, the State alleges that Kluppelberg could have gotten the information regarding Ramos' confession sooner, presumably because her name was reported in the Back of the Yards Journal. See Dckt No. 15, Resp. Mot. Stay, at ¶ 13. As Banks v. Dretke, 540 U.S. 668, 695 (2004) explained, "[o]ur decisions lend no support to the notion that the defendants must scavenge for hints of undisclosed Brady material." See also Banks, 540 U.S. at 696 ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process. Ordinarily, we presume that public officials have properly discharged their official duties.") (citations omitted). In fact, the courts have expressly rejected the notion that a newspaper article alerts a petitioner to potential Brady material, obviating the need for the prosecutor to disclose the same. Strickler, 527 U.S. at 284 & n.26.[4]

This is particularly the case here, where the article does not even mention Ramos' confession – it only links her to another, seemingly unconnected fire the neighborhood. Moreover, Kluppelberg was not arrested until nearly four years after the fire (and therefore four years after the newspaper article on Ramos). As this Court may remember, although the fire at 4448 S. Hermitage happened just hours after the fire that Ramos was convicted of setting, Kluppelberg was not arrested until January 1988. It defies reality to expect that Kluppelberg and his counsel would scour through four years of newspaper reports to find Ramos' name, and then

---

Ramos, despite her being considered a suspect in the crime. To the contrary, in response to Kluppelberg's FOIA, he received redacted copies of his police reports, including a Bomb & Arson report that the Chicago Police Department had told his previous counsel (in response to a subpoena) was lost.

[4]　Moreover, it is worth noting that the information regarding Ramos was only located in the Back of the Yards Journal, not in any of the major news publications in the area (nor were there computerized searchable engines at the time, making locating this information simple).

check out her case file to find the police report in which she confessed, especially where the State had given assurances that it had disclosed all exculpatory information.

Third, the State contends that the information relating to Ramos was not exculpatory, and therefore cannot satisfy the prejudice prong of a procedural default inquiry. That is belied by the record.

According to the police report, Ramos was brought in for questioning on both the fire for which she was ultimately convicted (at 4504 S. Marshfield) and the fire at 4448 S. Hermitage because of their proximity in time and location.[5] Additionally, there were similarities in the nature of the destruction that the fires wrought: For example, both resulted in total destruction of the building. Ramos admitted to the police that she set the fire at 4504 S. Marshfield in the afternoon of March 23, 1984. See Dckt. No. 1, Habeas Pet., Exhibit I. After she set the fire, she "picked up a six pack of Old Style and left the apartment" and "went to several different bars on Ashland." Id. "Sometime late that night [Ramos] eventually walked back to her apartment and observed that the building was burned to the ground." Id. Ramos told the police that "[a]t this time she did not remember setting any other fires other than the one in her apartment, but said that **she may have set some** after viewing her burned down building." Id. (emphasis added). She was simply too intoxicated to remember whether she had set the fire at 4448 S. Hermitage, although she did not rule it out as a possibility. Id.

It is axiomatic that a defendant may generally attempt to prove that someone else committed the crime for which he is charged. See, e.g., Holmes v. U.S., 547 U.S. 319, 329-31 (2006); People v. Beaman, 229 Ill.2d 56, 75-80, 890 N.E.2d 500, 511-14 (1st Dist. 2008). Given

---

[5] As noted in the petition, although the police report refers to a fire at 4454 S. Hermitage with six fatalities that occurred in the early morning hours of March 24, 1984, that is obviously a typographical error. There was only one fire on Hermitage on March 24, 1984 that caused six fatalities and that was the fire at 4448 S. Hermitage.

the similarities in the time, location and nature of the destruction of the fires, as well as Ramos' admission that she may have set the fire at 4448 S. Hermitage (clearly, a statement against interest), it is difficult to understand how this information is not exculpatory.[6]

Moreover, information relating to Ramos was highly material to Kluppelberg's defense. The evidence against Kluppelberg at trial was very thin. The State rested its case largely on the now-recanted testimony of Duane Glassco, a convicted felon, drug addict and personal enemy of Kluppelberg, who only came forward with information inculpating Kluppelberg nearly four years after the fire and only after he had been charged with his own criminal misconduct. Glassco testified that he was getting high on the night of the fire, but that he remembered seeing Kluppelberg going back and forth from his house to the house where the fire occurred. In addition, the State presented testimony of its arson expert. Despite taking no notes and making no reports of his investigation of the fire (which he did as a training exercise, not as the arson investigator) – and despite reaching findings that were contrary to the police department's official conclusion that the fire was accidental – the arson expert alleged that he remembered the fire from memory five years earlier and remembered that the fire was incendiary based on fire patterns that have since been wholly discredited by modern science.

Thus, evidence relating to Ramos would have been invaluable in Kluppelberg's case. It not only would have undercut Glassco's patently false testimony regarding Kluppelberg's involvement in setting the fire, but also could have been used to present a viable alternative suspect and explanation for how the crime occurred.

---

[6] Moreover, this information could have led to further exculpatory information upon additional investigation of Isabel Ramos – e.g., Kluppelberg could have spoken to witnesses who knew or saw Ramos that night, could have investigated more precisely the similarities between the fires, etc. See Beaman, 229 Ill.2d at 75, 890 N.E.2d at 511.

### B. Kluppelberg's Claims Based on Duane Glassco's Recantation

The State fares no better in arguing that claims based on Duane Glassco's recantation do not satisfy the "cause" and "prejudice" threshold to overcome procedural default. Just as is true for the Ramos confession, counsel did not know and with reasonable diligence could not have discovered this evidence prior to Glassco admitting as much. See, e.g., Strickler, 527 U.S. at 289-90.

The State does not dispute that Glassco's recantation is exculpatory, that the claims based on it establish constitutional violations, or that if believed it would be highly material to Kluppelberg's guilt. Indeed, to argue as much would be absurd. The State's case, as described above, relied heavily on Glassco. He was the only witness that tied Kluppelberg to the fire in any way.

Rather, the State's only retort is that Glassco's recantation cannot be trusted because recantations are inherently unreliable. But that type of determination cannot be made on the cold paper record currently before the court (or on the State's say-so). Rather, credibility assessments require an evidentiary hearing. See e.g., Ballard v. C.I.R., 544 U.S. 40, 59-60 (2005) (finding that an officer who hears witnesses will have view of the case that cannot be conveyed by paper record); Blackledge v. Allen, 431 U.S. 63, 82 n.25 (1977) (finding that in a habeas corpus proceeding, "[w]hen issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful"). The reasons for this are obvious: the factfinder can observe Glassco's demeanor, hear the inflections in his voice and see how he holds up on cross-examination. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985).

8

That is particularly the case here, where Glassco's affidavit is corroborated by other evidence in the record. For example, in his affidavit, Glassco avers that he could not have seen what he testified to having seen – Kluppelberg going back and forth from his house to the house where the fire occurred – because his view was obstructed by a building. This position was advanced at Kluppelberg's hearing on his motion for a new trial and it has since been further corroborated by Dawn Gramont's and Michelle Britton's affidavits. See Dckt No. 1, Habeas Pet., Exhibit C (Gramont Aff. ¶ 6) & Exhibit D (Britton Aff. ¶ 5). So too for Glassco's statement in his affidavit that he only gave the inculpatory testimony so that he could get a deal on his pending charges. Glassco told Gramont the same thing during the pendency of Kluppelberg's case. See Dckt No. 1, Habeas Pet., Exhibit C (Gramont Aff. ¶¶ 8, 9); see also Dckt No. 1, Habeas Pet., Exhibit D (Britton Aff. ¶ 6).

### C. Because James Kluppelberg is Actually Innocent of this Crime, Failure to Hear His Petition Would Result in a Fundamental Miscarriage of Justice

Finally, even if this Court were to find that Kluppelberg has not satisfied "cause and prejudice" to overcome procedural default, this Court should hear Kluppelberg's claims because the failure to do so would result in a fundamental miscarriage of justice. In addition to the constitutional claims raised in his habeas petition, Kluppelberg has alleged that he is actually innocent of the arson-murder for which he was convicted. See Dckt No. 1, Habeas Pet., Ground 19. Thus, pursuant to Schlup v. Delo, 513 U.S. 298 (1995), Kluppelberg's procedural default can be excused if he can show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. Such is the case here.

As detailed above, in Kluppelberg's Habeas Petition and in his Motion to Stay and Abey Should the Court Deem His Claims Unexhausted, there was a fire in the very early morning hours at 4448 S. Hermitage on March 24, 1984 that killed six persons. The Bomb and Arson

Unit determined that the cause and origin of the fire could not be determined due to the extensive destruction of the building. Further, tests of the debris from the fire to determine whether a fire accelerant was present came back negative. Therefore, the Bomb and Arson Unit closed the case as "apparent accidental fire deaths."

That remained the status of the case for nearly four years, until Duane Glassco was arrested on burglary and violation of probation charges. In exchange for a plea deal on those cases, Glassco gave the police a statement inculpating Kluppelberg; he later testified to the same. According to Glassco's testimony, despite admittedly being high on the night of the fire, and despite nearly four years having passed before he came forward, Glassco remembered seeing Kluppelberg going back and forth from the house the two were staying at on the night of the fire to 4448 S. Hermitage. Glassco also testified that Kluppelberg implicitly confessed to him on the night that he set the fire.

Since trial, Glassco has admitted that that testimony was absolutely false – and that the State knew that his testimony was false. Not only did Glassco not see Kluppelberg going back and forth to 4448 S. Hermitage that night, but also he could not have seen as much: his view of 4448 S. Hermitage from where he was staying was obstructed by a building. According to Glassco, prior to trial, the State had in its possession aerial photographs that were taken before 4448 S. Hermitage burned to the ground and that demonstrated that Glassco could not see what he was alleging to have seen. But the State withheld those photographs from the defense, and Glassco was instructed to testify nonetheless. Moreover, in his affidavit Glassco stated that Kluppelberg never confessed to him. According to Glassco, he "did what he did to get out" of going to jail; he cut a deal on his pending cases and avoided what could have been a lengthy prison sentence. See Dckt No. 1, Habeas Pet, Exhibit B (Glassco Aff. ¶¶ 4-7, 10).

The only other inculpatory testimony that the State presented at trial was that of its alleged arson expert, Francis Burns. At the time of the fire, Burns was part of a non-operational fire unit. He and his trainees allegedly viewed the fire at 4448 S. Hermitage as part of a training exercise, although he took no notes, made no reports, nor indicated to anyone at the police department that he though the fire was incendiary.

Nonetheless, Burns testified five years later at trial (from memory) that the fire was an arson based on alleged burn patterns. As set forth in more detail in Kluppelberg's habeas petition, those patterns have been wholly debunked by modern science. See Dckt No. 1, Habeas Pet., Ground 2 and Exhibits F (Report of Dr. Ogle) and Exhibit G (NFPA 921). Indeed, there is absolutely no physical evidence indicating that the fire at 4448 S. Hermitage was incendiary. See Dckt No. 1, Habeas Pet., Exhibit F, at 8.

Thus, Kluppelberg's conviction rested on gossamer-thin and patently false evidence. Since his conviction, not only has that evidence been entirely discredited, but also Kluppelberg has located additional evidence proving his innocence; namely, the suppressed confession of Isabel Ramos. Ramos confessed to having started a fire just a couple of blocks away, earlier in the day, then wandering around drunk for the remainder of the night and possibly setting the fire at 4448 S. Hermitage. This information was never disclosed to the defense despite being highly exculpatory: It not only includes Ramos' admission that she may have set the fire at 4448 S. Hermitage, but also, because of the similarities between the two fires, suggests a *modus operandi*.

As such, given the overwhelming evidence of Kluppelberg's innocence, and the strong likelihood that constitutional violations (as alleged in his petition) led to his wrongful conviction, the failure to hear Kluppelberg's habeas claims would result in a fundamental miscarriage of

justice. See, e.g., Souter v. Jones, 395 F.3d 577, 590-92 (6th Cir. 2005) (finding actual innocence exception satisfied where petitioner presented recantations, new expert analysis of physical evidence and new photographs of victim's clothing corroborating the other new evidence); Fairman v. Anderson, 188 F.3d 635, 644-45 (5th Cir. 1999) (finding fundamental miscarriage of justice exception satisfied on the basis of a recanting witness' testimony).

## II.     Alternatively, this Court Should Stay Proceedings and Hold the Petition in Abeyance

Alternatively, if this Court determines that Kluppelberg's claims are unexhausted, this Court should stay proceedings on his petition and hold it in abeyance while he returns to State court to present his unexhausted claims. As demonstrated above, and in his initial filing, see Dckt No. 5,, Kluppelberg has demonstrated cause for his failure to raise those claims previously. Similarly, for the same reason that those claims demonstrate "prejudice" under the procedural default inquiry, they are also meritorious. Indeed, the State never appears to contest that Kluppelberg might be permitted to litigate these claims in State court, noting instead that "petitioner may still have an opportunity to present his defaulted claims to the state courts." See Dckt No. 15, Resp. Mot. Stay, at ¶ 5.

## Conclusion

At bottom, Kluppelberg requests the opportunity to present the claims he has raised in his federal habeas petition, based on new evidence he only recently secured, before a court of law. As set forth in this reply, he believes the proper forum for doing so is this Court. However, if this Court should decide otherwise, Kluppelberg requests permission to stay proceedings and hold his habeas petition in abeyance while he returns to State court to present his claims there.

Respectfully Submitted,

___/s/Gayle Horn

Jon Loevy
Russell Ainsworth
Gayle Horn
Tara Thompson
THE EXONERATION PROJECT
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 834-4488 (phone)
(773) 702-2063 (fax)